HORATIO G. ROBERTS, APPELLANT, *v.* THE OGDENS-BURGH AND LAKE CHAMPLAIN RAILROAD COMPANY, RESPONDENT.

*Marriage — statutes against remarriage of divorced parties — construction of them.*

In 1861, one Taylor procured a divorce, in Massachusetts, from his wife Adaline, on account of her adultery. In January, 1862, the plaintiff married Adaline, in Massachusetts, and subsequently married her a second time in New Hampshire. The statutes of Massachusetts prohibited the remarriage of one divorced for adultery during the life of the other party. The statute of New Hampshire prohibited the marriage of parties "where either has a former wife or husband living:"

*Held*, the word "former" in the New Hampshire statute imported that the relation of husband and wife continued to exist at the time of the second marriage and did not apply to cases in which the parties had been divorced.

That the Massachusetts statute had no extra-territorial effect, and that the New Hampshire marriage being valid in New Hampshire, was valid in this State.

APPEAL from a judgment in favor of the defendant, entered upon an order dismissing the complaint, and from an order denying a motion for a new trial made upon the minutes of the justice before whom the action was tried.

The plaintiff brought this action to recover damages for the loss of services of his wife and for expenses incurred, resulting from an injury she sustained in consequence of the alleged negligence of the defendant while she was being conveyed as a passenger upon the defendant's railroad. At the close of the testimony upon the trial, at circuit, before a jury, the court dismissed the complaint and directed a judgment for the defendant, upon the ground that it appeared that the female injured was not the wife of the plaintiff.

*S. A. Kellogg*, for the appellant.

*Louis Hasbrouck*, for the respondent.

LANDON, J.:

The plaintiff was married to Adaline Smith, the female injured, January 1, 1862, at Lowell, Massachusetts. Prior thereto, and on November 26, 1856, the said Adaline was married to John F. Taylor. Taylor is still living. Taylor obtained in due form of

law a decree of divorce in the Supreme Judicial Court of Massachusetts, June 29, 1861, against the said Adaline and upon the ground of her adultery; the language of the decree being: "It is, therefore, on the 29th day of June A. D. 1861, decreed by the court here, that the bond of matrimony heretofore entered into between the said John F. Taylor and the said Adaline Taylor be, and for the crime of her adultery hereby is dissolved." Some doubt being suggested as to the validity of the marriage between the plaintiff and Adaline, in the State of Massachusetts, they went to Nassau, in the State of New Hampshire, and were there again married about March 1, 1862. In May following the plaintiff and Adaline came to the State of New York and there lived together as husband and wife until Adaline's death, in 1883, shortly before this trial.

The marriage between the plaintiff and Adaline in the State of Massachusetts, January 1, 1862, was invalid, because the statutes of that State prohibited the guilty party, in case of divorce, from again marrying during the life of the other party. This proposition is not contested by the plaintiff. The important question is whether their subsequent marriage in the State of New Hampshire was valid or invalid. It is conceded that if valid by the law of that State, when celebrated there, it is valid everywhere. The statutes of the States of Massachusetts and of New Hampshire relative to marriage and divorce were read in evidence. No evidence was given of the construction put upon the New Hampshire statute by the courts of that State, and it does not appear from the cases cited from the reports of that State that the precise question here presented has received adjudication there.

The statutes of New Hampshire, in 1862, prohibited marriages within specified degrees of consanguinity and affinity. Section 1, of the chapter on divorces, reads as follows: " All marriages prohibited by law, on account of the consanguinity or affinity of the parties, or where either has a former wife or husband living, knowing such wife or husband to be alive, shall, if solemnized in this State, be absolutely void without any decree of divorce or other legal process."

" Section 3. A divorce from the bonds of matrimony shall be decreed in favor of the innocent party for either of the following

causes:" Then follow fourteen specifications of causes, the second of which is, "adultery of either party."

Another statute provides "that if any person having a husband or wife alive shall marry or cohabit with another person, such person so marrying or cohabiting shall be punished as in case of adultery," excepting among other cases "any person legally divorced."

The learned judge at circuit held that the marriage between the plaintiff and Adaline Smith, in New Hampshire, was void because she had "a former husband living." The learned judge obviously adopted the construction given in *Cropsey* v. *Ogden* (11 N. Y., 228), to that section of the Revised Statutes of this State, which declares that "no second or other subsequent marriage shall be contracted by any person during the lifetime of any *former* husband or wife of such person, unless, first, the marriage with such *former* husband or wife shall have been annulled or dissolved, for some cause other than the adultery of such person," etc. It was there held that the word *former* as used in our statute imports merely that the relation of husband and wife once existed, but does not import that the relation continues or has ceased. This construction was reached not simply from a consideration of the meaning of the word *former*, but from its meaning as our legislature used it. It seems necessary to give it that construction in order to give any meaning to the exception quoted, and to the exception in the following section which relates to the continued absence for five years of either husband or wife.

The New Hampshire statute contains no such exception. Either all divorced parties are permitted to marry again upon the theory that the relation of husband and wife cannot exist after the bonds of matrimony once entered into have been dissolved, or subsequent marriage is denied to both the innocent and the guilty parties during the lifetime of the other party. We assume from the adjudications of the courts of that State, to which we are cited, that although divorce is decreed only in favor of the innocent party, both parties are thereafter free to marry. (*Clark* v. *Clark*, 10 N. H., 385; *Dow* v. *Dow*, 38 id., 188; *Emerson* v. *Shaw*, 56 id., 420; *State* v. *Clark*, 54 id., 456.) The precise meaning, however, of the word *former* as used in the statute is not considered in these cases. It would be difficult to believe that the policy of a State, which can

find fourteen different causes for divorce, would be to restrict the subsequent marriage of the innocent party.

The persuasion, therefore, is strong that we must construe the word *former* in the sentence " when either has a former wife or husband living," of the New Hampshire statute, not as simply importing that the relation of husband and wife once existed, but that it continues to exist. This construction is admissible. The word *has* is the present form of the verb to have. In the case of a woman twice married, if we desire to convey the idea that the marriage relation still exists between herself and her former husband as well as her latter husband, we would say she *has* a former husband; but if such relation had ceased to exist we would say she *has had* a former husband. She *has* the relation that exists; she *has had* that which existed.

In *Moore* v. *Hegeman* (92 N. Y., 521), the Court of Appeals construed the word *former* in a somewhat similar statute of New Jersey as equivalent to *another*, because the statute used the words as the equivalents of each other; and held the word *former* when so used implied the continued existence of the relation. The meaning of the word is controlled by its association with other words or sentences and the manifest intention; and this is the reason of the decision in *People* v. *Faber* (92 N. Y., 146). This decree of divorce was pronounced in the State of Massachusetts. Section 6 of chapter 107, of the general statutes of that State, then in force, provides, " a divorce from the bond of matrimony may be decreed for adultery or impotency of either party." Such a decree, according to the courts of that State, dissolves the bond of matrimony between both parties. (*Commonwealth* v. *Putnam*, 1 Pick., 136 ; *Commonwealth* v. *Lane*, 113 Mass., 458.) The twenty-fifth section of the same chapter permits the innocent party to marry again as if the other were dead, but forbids the guilty party to marry again during the life of the other party, and declares such prohibited marriage void and the party so marrying guilty of the crime of polygamy. But the courts of Massachusetts hold that this disability to marry again is simply a statutory and not a natural disqualification to marry, and has no force beyond the territory of the State. In the case last cited the defendant married his first wife in Massachusetts; she obtained a divorce from him on the ground of his adultery. He

then went into the State of New Hampshire and married his second wife and returned and lived with her in Massachusetts, whereupon he was indicted for polygamy. The court held that upon these facts the marriage in New Hampshire was valid, and that the indictment could not be sustained. To much the same effect are *Van Voorhis* v. *Brintnall* (86 N. Y., 18), and *Thorp* v. *Thorp* (90 id., 602).

We conclude that Adaline Smith, when she married the plaintiff in New Hampshire, was freed from the bonds of matrimony contracted with her former husband, and therefore the New Hampshire statute did not prohibit her marriage there; that the Massachusetts statute could not prohibit it in New Hampshire so as to make it invalid there, and being valid according to the law of the State where solemnized, it was valid everywhere.

The court should have instructed the jury that if they believed the testimony established the fact of the marriage in New Hampshire, then Adaline was the wife of the plaintiff.

Judgment should be reversed and a new trial ordered, costs to abide the event.

LEARNED, P. J., and FISH, J., concurred.

Judgment reversed, new trial granted, costs to abide event.